JOHN J. O'DONNELL, adminstrator, *vs.* INHABITANTS
OF NORTH ATTLEBOROUGH.

Bristol.    October 26, 1915. — February 10, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Way*, Public: defects. *Electricity.*

If a telephone pole, which stands at the edge nearer the street of a seven foot dirt
sidewalk, has attached to it six feet and eight inches above the surface of the
ground a guy wire which runs, taut and unbroken, parallel with and nearly directly
above the edge of the sidewalk and is attached at the other end twenty-eight feet
from the ground to another pole seventy-six feet distant which supports, among
others, wires that transport electricity of a dangerous voltage supplied by a
town to commercial customers, such guy wire, although the town negligently
has permitted it to become charged from its wires with a current of electricity
which kills a person standing upon the ground who, in raising his arm, acci-
dentally touches it, is not a defect in or want of repair of a public way under
R. L. c. 51, § 17.

TORT by the administrator of the estate of Thomas E. O'Don-
nell, late of North Attleborough, against that town for the death
of the plaintiff's intestate on March 12, 1909, alleged to have been
caused by his hand coming in contact with a guy wire leading to
the top of a pole which formed a part of an electric lighting plant
maintained and operated negligently by the defendant, whereby
the intestate received an electric shock from which he died.   Writ
dated May 8, 1909.

The declaration originally contained a single count which sought
recovery on an alleged liability of the defendant as the proprietor
of an electric lighting plant.   After a trial in the Superior Court
and a verdict for the plaintiff, upon a report of the case by the
presiding judge, it was held by this court in a decision reported
in 212 Mass. 243, that a municipality was not liable for caus-
ing death as the owner of an electric lighting plant.   There-
upon the plaintiff was permitted to amend his declaration by
adding a count alleging, under R. L. c. 51, § 17, that the cause
of the death of the intestate was a defect or want of repair of a
highway of the defendant, and the case was tried before *Sander-*

*son,* J., upon that count alone.   The material facts are stated in the opinion.

At the close of the evidence the defendant, among other requests for rulings, asked for a ruling that there was no evidence of any defect or want of repair of the way and that therefore the plaintiff was not entitled to recover.

By agreement of the parties the jury found for the plaintiff in the sum of $750, and at the request of the parties the judge reported the case upon the stipulation that, if any of the rulings requested should have been given, judgment was to be entered for the defendant; otherwise, judgment was to be entered on the verdict.

*C. R. Cummings,* for the plaintiff.

*F. S. Hall,* (*S. P. Hall & G. L. Connors* with him,) for the defendant.

PIERCE, J.   The evidence warranted the jury in finding the following to be the facts:  On the day of the intestate's injury and death and for a long time before that day, a line of poles with cross arms stood just within the curbing of the sidewalk on the west side of Broad Street in the defendant town; and less than one hundred feet north from the end of the curbing a similar pole with cross arms stood in the same position relative to the curbing if extended to that point.   The sidewalk adjacent to the last named pole, as it extended between it and a pole next to the south at the end of the curbing, was between six and seven feet in width and was constructed of dirt.   The pole next to the curbing hereinafter will be called the combination pole and the one next to the north of that pole the telephone pole.

The combination pole supported the telephone wires of the Providence Telephone Company and also the fire alarm and electric lighting wires of the defendant.   The defendant conducted its own electric lighting plant, for the purpose of lighting its streets and for the sale of the electricity which it manufactured. Upon the combination pole there were six cross arms with pins. The top cross arm supported the fire alarm wires, and the lowest cross arm sustained the telephone wires.   The intermediate cross arms carried sixteen wires of the electric lighting plant with a voltage of twenty-two hundred.

From the combination pole the fire alarm and electric light

and power wires were carried diagonally across the street to a pole standing on the east side of Broad Street, and the telephone wires were continued along the west side seventy-six feet to the telephone pole and from that pole to another telephone pole on the east side of Broad Street. To relieve the strain upon the combination and telephone poles due to the method of passing the wires across Broad Street, a guy wire was attached directly under the top arm of the combination pole and thence was carried and fastened to the telephone pole, at a point six feet and eight or nine inches above the level of the ground at the foot of the telephone pole. A like guy wire was projected from the top of the telephone pole to near the foot of the combination pole, and there fastened. The guy wires ran at the edge of the sidewalk, parallel to it and to the street. They crossed each other at a point more than ten feet above the ground.

On March 12, 1909, the intestate stopped by the side of the telephone pole while awaiting the coming up of several companions with whom he had been walking on the west sidewalk of Broad Street. As he stood beside the telephone pole he first leaned his left arm upon it, and then, as though in the act of yawning, lifted his arm, touched the guy wire, received an electric shock and instantaneously died.

The guy wire which the intestate touched ran from its fastening at the top of the combination pole, over and under the electric light and power wires and within an inch and one half to two inches of one of them which was bare of insulation for an inch just under the guy. Some of the other adjacent wires had abrasions that "appeared to be old."

There was no direct evidence that an electric current ever had passed from the power wire to the guy wire before the injury to the intestate other than the testimony of a young man that in November, 1908, "We were coming along and I jumped up and touched the wire and got a slight shock." Nevertheless, because the guy wire, as it extended from the top of the combination pole to the telephone pole, passed over and under and in close proximity to power wires whose insulation in places showed "old abrasions," it properly could not have been ruled that the defendant did not know, or by the exercise of proper care and diligence might not have had reasonable notice of the defect in the insula-

tion of the power wires and as a direct consequence thereof, the probable presence in the guy wire of electrical energy of a voltage sufficient to destroy human life.

There was no danger obviously likely to result to the intestate, or to others, from the act of leaning against the telephone pole or from touching or grasping the guy wire. There was therefore no duty upon the intestate to guard against a danger which no reasonable person could foresee or anticipate. It follows that the presiding judge could not have ruled as matter of law that the intestate was not in the exercise of due care. Nor properly could he have ruled that the intestate ceased to be a traveller when he stopped to await the coming up of his companions. *Gulline* v. *Lowell*, 144 Mass. 491.

Assuming without deciding that the evidence warranted the jury in finding that the defendant, as a commercial distributor of electric power, was negligent in the repair and maintenance of its electric and guy wires, the question whether the guy wire charged with electricity was a defect in the way remains for consideration.

The guy wire was attached to the telephone pole six feet and eight inches above the level of the ground at the foot of the pole, ran south to the combination pole seventy-six feet distant, and was fastened to that pole at a point twenty-eight feet above the level of the ground at the foot of that pole, that is, in crossing the distance between the two poles the height of the guy wire above the sidewalk was increased somewhat more than three inches in every foot. It ran parallel with and near to the edge of a seven foot sidewalk, did not cross the street, sidewalk or curbing, was not broken or detached from its fastenings, did not obstruct the free passage of travellers on street or sidewalk, and could be reached by a normally tall person only when standing close to the telephone pole.

A way is defective only when it is not reasonably safe and convenient for travellers. R. L. c. 51, § 1.

No case has been cited and none has been found that goes so far as to hold that a wire conditioned as this wire was constitutes in itself a defect in the way, or by reason of its proximity causes the travelled way to be defective. See cases collected in 20 L. R. A. (N. S.) 648. *Hayes* v. *Hyde Park*, 153 Mass. 514,

*Graham* v. *Boston,* 156 Mass. 75, *Bourget* v. *Cambridge,* 156 Mass. 391, are instances of obstructions in the travelled way and are therefore distinguishable.

The ruling asked for by the defendant, that "There is no evidence of any defect or want of repair of the way and, therefore, the plaintiff is not entitled to recover," should have been given. *Kellogg* v. *Northampton,* 4 Gray, 65, 69.

In accordance with the terms of the report judgment is to be entered for the defendant; and it is

*So ordered.*